United States District Court
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    ADAUTO REYNOSO,                      ) Case No. 09-3225 SC
                                          )
8              Plaintiff,                  ) ORDER RE: MOTIONS TO
                                          ) DISMISS AND MOTIONS TO
9        v.                                ) STRIKE
                                          )
10   PAUL FINANCIAL, LLC, SAXON            )
11   MORTGAGE SERVICES, INC., QUALITY      )
     LOAN SERVICE CORP., CITYMUTUAL        )
12   FINANCIAL, PROFESSIONAL APPRAISERS    )
     CO., and DOES 1 though 50,            )
13   inclusive,                            )
                                          )
14             Defendants.                 )
15   _____  )

16

17   I.   **INTRODUCTION**

18        This suit involves Plaintiff Adauto Reynoso's ("Plaintiff")

19   allegations that Defendants have engaged in an improper nonjudicial

20   foreclosure upon his home.  See Notice of Removal, Docket No. 1,

21   Ex. A ("Compl.").  Defendant Saxon Mortgage Services, Inc.

22   ("Saxon"), has filed a Motion to Dismiss.  Docket No. 13 ("Saxon

23   MTD").  Saxon has also filed a separate Motion to Strike Damages

24   Allegations.  Docket No. 15 ("Saxon MTS").  Plaintiff filed a

25   consolidated Opposition to these two Motions.  Docket No. 29

26   ("Pl.'s Opp'n to Saxon MTD").  Saxon has filed a consolidated

27   Reply.  Docket No. 32 ("Saxon MTD Reply").

28        Defendant Paul Financial, LLC ("Paul Financial") has also

filed a Motion to Dismiss, or Alternatively, to Strike Portions of the Complaint. Docket No. 4 ("Paul Financial MTD"). Plaintiff has filed an Opposition. Docket No. 28 ("Pl.'s Opp'n to Paul Financial MTD"). Paul Financial filed a Reply. Docket No. 30 ("Paul Financial MTD Reply").

Having considered the submissions of each party, this Court has concluded that these Motions are appropriate for determination without oral argument. Saxon's Motion to Dismiss is GRANTED. Paul Financial's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motions to Strike of both Saxon and Paul Financial are DENIED as moot.

## II. **BACKGROUND**

On March 8, 2005, Plaintiff acquired a house and parcel of property located in South San Francisco, California ("the property"). See Request for Judicial Notice ("RJN") Ex. 1 ("Grant Deed").[1] However, the transaction at the heart of this dispute

---

[1] Saxon has submitted a Request for Judicial Notice in support of its Motion to Dismiss. Docket No. 14. The request includes public records -- instruments recorded with the San Mateo County Recorder's Office with respect to the various parties' interest in the property. These items are public records and properly subject to judicial notice. See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co., 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005). This information is neither disputed nor reasonably questioned, and the Court may take judicial notice of it. See O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1224-25 (10th Cir. 2007). In some of his briefs responding to separate motions, Plaintiff both relies on these documents and questions their authenticity, based on the fact that two of the documents were not recorded until several weeks after they were signed, and were notarized in Dakota County, Minnesota. See Pl.'s Opp'n to Mot. to Expunge Lis Pendens, Docket No. 24, at 5-7. This alone does not call the documents into question, particularly where California law explicitly permits these to be recorded subsequent to their execution, see Cal. Civ. Code § 2934(b), and recognizes documents notarized in other states, see id. § 1182.

United States District Court
For the Northern District of California

took place roughly four months later, in July of 2005, when Plaintiff apparently refinanced the loans that he initially used to purchase the property. Compl. ¶ 12-13.

On July 22, 2005, Plaintiff executed a Deed of Trust.  <u>Id.</u> ¶ 13; RJN Ex. 4 ("DOT") at 1.  This Deed of Trust names Paul Financial as the lender, and Plaintiff as the borrower, with the amount of the loan set at $485,500.00.  Compl. ¶ 13; DOT at 1.  An entity called Mortgage Electronic Registration Systems, Inc. ("MERS"), was named as the beneficiary and nominee for Paul Financial.  DOT at 2; RJN Ex. 5 ("DOT and Assignment of Rights") at 1.  Saxon was the loan servicer.  Compl. ¶¶ 1, 6; Saxon MTD at 2. CityMutual (which has not yet appeared in this action, and which Plaintiff has apparently been unable to serve) served as the broker.  Compl. ¶ 7.

On February 3, 2009, MERS transferred its interest under the Deed of Trust to the Bank of New York Mellon ("BNYM").  RJN Ex. 8 ("Assignment of DOT").  Roughly two weeks later, BNYM signed a Substitution of Trustee that named Quality Loan Service Corporation ("Quality") as the trustee under the Deed of Trust.[2]  RJN Ex. 7 ("Substitution of Trustee").

At some point, Plaintiff defaulted on the loan, and on February 18, 2009 (the same day Quality was substituted as trustee), Quality executed a Notice of Default and Election to Sell, which stated that Plaintiff was behind in his payments by

_____

[2] Although Quality is named as a Defendant in this action, it filed a Notice of Nonmonetary Status prior to removal of this action to federal court.  This Notice is attached to the Notice of Removal without exhibit number.  The record does not indicate that any party opposed Quality's assumption of nonmonetary status.  Quality is therefore not actively participating in this action, and is only a nominal defendant.  <u>See</u> Cal. Civ. Code § 2924l.

$14,268.59.  RJN Ex. 6 ("Notice of Default").  Plaintiff claims

that the Notice of Default was served on him on March 18, 2009.

Compl. ¶ 35.  Plaintiff claims to have sent by certified mail a

rescission letter, pursuant to the Truth in Lending Act ("TILA"),

15 U.S.C. § 1635, on May 4, 2009.  Compl. ¶ 18.  The Complaint does

not indicate the contents of this letter, nor does it indicate to

whom the letter was sent.

Quality executed a Notice of Trustee's Sale on May 20, 2009.

Id. ¶ 35; RJN Ex. 9 ("Notice of Trustee's Sale") at 1.  This Notice

set June 16, 2009, as the date of sale.  Compl. ¶ 35; Notice of

Trustee's Sale at 1.  On June 15, 2009, one day before the

trustee's sale, Plaintiff filed his Complaint, which asserts an

audacious twenty-four causes of action against Defendants.  See

Compl.  On the same day, Plaintiff recorded a Notice of Pendency of

Action with the San Mateo County Recorder's Office, and placed

copies of the Notice in the mail.  See Motion to Expunge Notice of

Pending Action, Docket No. 19, Ex. 1 ("NPA").  On the following

day, Kevin Cullinane and Lisa Cullinane (collectively, the

"Cullinanes") purchased the property in the trustee's sale.  RJN

Ex. 10 ("Trustee's Deed Upon Sale").  Plaintiff began serving

copies of the Complaint upon Defendants, beginning with Saxon, on

June 23, 2009.[3]

## III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

---

[3] The Proof of Service is attached to the Notice of Removal, and
does not have an exhibit number.

4

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based

2   on the lack of a cognizable legal theory or the absence of

3   sufficient facts alleged under a cognizable legal theory.

4   <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

5   1990).  Allegations of material fact are taken as true and

6   construed in the light most favorable to the nonmoving party.

7   <u>Cahill v. Liberty Mutual Ins. Co.,</u> 80 F.3d 336, 337-38 (9th Cir.

8   1996).  Although well-pleaded factual allegations are taken as

9   true, a motion to dismiss should be granted if the plaintiff fails

10  to proffer "enough facts to state a claim for relief that is

11  plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

12  547 (2007).  The court need not accept as true legal conclusions

13  couched as factual allegations.  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937,

14  1949-50 (2009).  "Threadbare recitals of the elements of a cause of

15  action, supported by mere conclusory statements, do not suffice."

16  <u>Id.</u> at 1949.

17

18  **IV.  <u>DISCUSSION</u>**

19        **A.  <u>Preliminary Matters</u>**

20             **1.  Quality Held the Power of Sale**

21       Plaintiff first claims that Paul Financial, as the lender, was

22  the only party granted the power of sale.  Compl. ¶¶ 51, 53.  This

23  is plainly false.  "Under California Civil Code section 2924(a)(1),

24  a 'trustee, mortgagee or beneficiary or any of their authorized

25  agents' may conduct the foreclosure process."  <u>Coyotzi v.</u>

26  <u>Countrywide Fin. Corp.</u>, No. 09-1036, 2009 U.S. Dist. LEXIS 91084,

27  *53 (E.D. Cal. Sept. 16, 2009).  Indeed, under California law one

28  of the primary duties of the trustee is "to initiate nonjudicial

**United States District Court**
For the Northern District of California

foreclosure on the property upon the trustor's default, resulting in a sale of the property." Kachlon v. Markowitz, 168 Cal. App. 4th 316, 334 (Ct. App. 2008).   The beneficiary is free to make a substitution of the trustee in order to conduct the foreclosure sale.   See id.; Cal. Civ. Code §§ 2934a, 2924b(b)(4).   As this Court outlined above, see Part II, supra, MERS was initially named as beneficiary, DOT at 2, and therefore possessed the power of sale upon default, which it could transfer to a trustee.   MERS later transferred its interest to BNYM, Assignment of DOT at 1, which in turn named Quality as the substituted trustee, Compl. ¶ 1; Substitution of Trustee at 1.   Quality therefore held the right to initiate the foreclosure sale.   Plaintiff has not supported his position by alleging any facts that would give rise to the inference that these transfers of interest were ineffective.

Plaintiff relies heavily upon section 2932.5 of the California Civil Code, which states that an assignment of the power of sale must be "duly acknowledged and recorded" to be effective."   As noted above, the record reflects a complete chain of title with respect to Quality's status as trustee, and therefore with respect to Quality's power of sale.   The Court notes that the documents substituting Quality as the trustee appear to have been recorded several weeks after the Notice of Default was recorded, although they were executed before or concurrent with the Notice of Default, and recorded prior to the Trustee's sale.   See Substitution of Trustee at 1; Assignment of Deed of Trust at 1.   This alone cannot destroy the chain of title; indeed, the California Civil Code expressly permits trustees to wait and record a substitution of trustee until after a notice of default has been recorded.   Section

1   2934(b) of the California Civil Code states:

2           If the substitution is executed, but not
            recorded, prior to or concurrently with the
3           recording of the notice of default, the
            beneficiary or beneficiaries or their authorized
4           agents shall cause notice of the substitution to
            be mailed prior to or concurrently with the
5           recording thereof, in the manner provided in
            Section 2924b, to all persons to whom a copy of
6           the notice of default would be required to be
            mailed by the provisions of Section 2924b. An
7           affidavit shall be attached to the substitution
            that notice has been given to those persons and
8           in the manner required by this subdivision.

9   Cal. Civ. Code § 2934a(b). In accordance with this provision, the

10  Substitution of Trustee includes an affidavit that the document was

11  sent to Plaintiff prior to the date on which the Substitution was

12  recorded. Substitution of Trustee at 1, 3. All necessary

13  documents were recorded by the time the trustee's sale occurred.

14  The Complaint therefore does not state a basis for concluding that

15  Quality did not possess the power of sale.

16          **2.   Procedures of the Trustee's Sale**

17      Plaintiff claims that the trustee's sale was improperly

18  conducted. Plaintiff first complains that although the Notice of

19  Default was recorded on February 19, 2009, Plaintiff was not

20  actually notified until March 18, 2009. Plaintiff cites section

21  2924.3 of the California Civil Code to suggest that Quality had a

22  fifteen-day period during which it could provide Plaintiff with

23  notice. Compl. ¶ 35. However, even assuming that this section

24  applies to Quality,[4] it only requires the agent to mail the Notice

25  of Default to the beneficiary -- not the trustor/borrower. Cal.

26

27  ────────────────
    [4] Cal. Civ. Code § 2924.3 applies only to "a person who has
28  undertaken as an agent of a . . . beneficiary . . . to make
    collections of payments from an obligor under the note . . . ."

**United States District Court**
For the Northern District of California

1    Civ. Code. § 2924.3.[5]

2        Plaintiff summarily alleges that "the foreclosure sale of the

3    Subject Property was not executed in accordance with the

4    requirements of Cal. Civ. Code §§ 1624, 2923.5, 2923.6, 2932 and

5    Cal. Comm. Code § 3302 et seq." Compl. ¶ 116, see also id. ¶¶ 28,

6    30.[6]  Similarly, Plaintiff's allegation that the Notice of

7    Trustee's sale contained an improper statement of obligation,

8    Compl. ¶ 35, is not supported by any facts.  The Court need not

9    accept as true conclusions of law that are devoid of factual

10   support.  Iqbal, 129 S. Ct. at 1949.[7]

11       Plaintiff complains that the beneficiary is not named in the

12   Notice of Trustee's sale, but cites no provision for this

13   _____

14   [5] Another section, which Plaintiff does not cite, requires a
     trustee to send a notice of default to the trustor within ten
15   business days of recordation, although it does not require actual
     receipt within any particular time frame.  See Cal. Civ. Code
16   § 2924b(b); Estate of Yates v. West End Fin. Corp., 25 Cal. App.
     4th 511, 518 (Ct. App. 1994) (section 2924b(b) "requires a trustee
17   to give notice to (1) the trustor or mortgagor").  Plaintiff does
     not indicate when the Notice of Default was sent to him, but he
18   says it was "served" upon him only nine business days after the
     deadline to mail it.  Compl. ¶ 35.
19   [6] Plaintiff's only suggestion of a violation of section 1624 is
     that Quality did not have written authorization to act as an agent
20   -- however, the comprehensive foreclosure provisions permit a
     trustee to initiate a foreclosure and do not require separate
21   authorization.  See Part IV.A.1, supra, & Part IV.A.3, infra.
     [7] Plaintiff's complaint does include the curious claim that he
22   "tendered the full amount owed under the Note." Compl. ¶ 31.a.
     This statement is ambiguous.  Given the Complaint's repeated
23   assertion that the note has been rescinded and is extinguished,
     see, e.g., id. ¶ 19, the Court reads this statement as a legal
24   claim that no additional amount is due under the note, rather than
     a factual claim that Plaintiff has tendered a certain amount to
25   Defendants.  The later reading is too implausible -- the Court is
     incredulous that Plaintiff would make such an important factual
26   assertion, but couch it in language so ambiguous and bury it so
     deeply within the Complaint.  Plaintiff has not otherwise suggested
27   that he has made any payments on the note since the Notice of
     Default.  This statement is therefore a legal conclusion -- that no
28   additional amount was due on the extinguished note -- which the
     Court can reject in the absence of supporting factual allegations.

requirement.  Compl. ¶ 35.  He similarly claims that the Notice of Trustee's Sale was not posted on his property.  Id.  However, Plaintiff never explains why any of these irregularities caused him harm, and does not suggest that the foreclosure would have been averted but for these alleged deficiencies.  Courts have "rejected claims of deficient notice where no prejudice was suffered as the result of a procedural irregularity."  Pantoja v. Countrywide Home Loans, Inc., No. 09-1615, 2009 U.S. Dist. LEXIS 70856, *17 (N.D. Cal. July 9, 2009) (rejecting claim that notice of default failed to name beneficiary); see also Lehner v. United States, 685 F.2d 1187, 1190-91 (9th Cir. 1982) (rejecting due process claim based on failure to provide written notice of foreclosure sale where plaintiff had actual notice); Knapp v. Doherty, 123 Cal. App. 4th 76, 93-94 (Ct. App. 2004) (rejecting claim based on deviation from foreclosure notice requirement where "[t]here was no prejudicial procedural irregularity").  Plaintiff therefore cannot state a claim on the basis of deficiencies in the trustee's sale.

   **3.   No Defendant Was Required to Hold the Note**

   Plaintiff's repeated allegations that the sale was improper because Defendants did not possess the note must fail.  Plaintiff claims that the promissory note is a negotiable instrument, and must therefore be enforced by the note holder pursuant to section 3301 of the California Commercial Code.  This section does limit enforcement of most negotiable instruments to the note holder.  Cal. Comm. Code § 3301.  However, as a California Court of Appeal has explained:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive.  It includes a myriad

**United States District Court**
For the Northern District of California

> of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

Moeller v. Lien, 25 Cal. App. 4th 822, 834 (Ct. App. 1994).

Contemporary case law addressing this issue is clear: "Under Civil Code section 2924, no party needs to physically possess the promissory note." Sicairos v. NDEX West, LLC, 2009 U.S. Dist. LEXIS 11223, *(S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)); see also Coyotzi, 2009 U.S. Dist. LEXIS 91084 at *53-54 (same); Lomboy v. SCME Mortgage Bankers, No. 09-1160, 2009 U.S. Dist. LEXIS 44158, * 12-13 (N.D. Cal. May 26, 2009) ("Under California law, a trustee need not possess a note in order to initiate foreclosure under a deed of trust.").

**4.   Plaintiff Did Not Effectively Rescind the Loan**

TILA gives Plaintiff a three-year right to rescind from the date of the consummation of a transaction. 15 U.S.C. § 1635(f). The expiration for the right of rescission cannot be tolled, because "§ 1635 is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three year limitation period." Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002); see also Beach v. Ocwen Fed. Bank, 523 U.S. 410, 417 (1998) ("Section 1635(f) . . . talks not of a suit's commencement but of a right's duration . . . ."); D'Onofrio v. United States Bank, No. 09-3701, 2009 U.S. Dist. LEXIS 95057, *4 (N.D. Cal. Oct 13, 2009) ("The three-year statute of limitation for TILA rescission claims is absolute; it cannot be tolled.").

Plaintiff claims that on May 4, 2009, he rescinded the loan under TILA, 15 U.S.C. § 1635. Compl. ¶¶ 18-19. However, the transaction in question was consummated in May of 2005. DOT at 1. The right to rescind therefore expired in May of 2008. See 15 U.S.C. § 1635(f). Plaintiff attempted to rescind one year after this deadline had passed. Compl. ¶ 18. Even assuming that the rescission letter was proper in all other respects, Plaintiff's attempt to rescind is untimely and this Court may not address his TILA-related rescission claim.

### 5.   Plaintiff's Ability to Tender

A number of Plaintiff's causes of action, discussed in more detail below, involve an attempt to rescind the loan. In California, claims that seek to undue a wrongful foreclosure generally cannot go forward unless the plaintiff has at least alleged a credible offer to tender indebtedness. See Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (Ct. App. 1996) (borrower "required to allege tender of the amount of . . . [lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure"); Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (Ct. App. 1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). This requirement prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, No. 99-242, 1999 U.S. Dist. LEXIS 14550, *5-6 (N.D. Cal. Sept. 15,

**United States District Court**
For the Northern District of California

1  1999) (citing <u>United States Cold Storage v. Great Western Sav. &</u>

2  <u>Loan Ass'n</u>, 165 Cal. App. 3d 1214, 1225 (Ct. App. 1985)).

3      Here, Plaintiff has alleged that he is "willing and able to

4  tender the face value of the note minus equitable set off."  Compl.

5  ¶ 227.  The Court concludes that Plaintiff's ability to tender is

6  therefore a factual issue that must be determined at a later time.[8]

7      **B.   First Cause of Action: Quiet Title**

8      Plaintiff is seeking to quiet title against Saxon and Quality.

9  Compl. ¶ 76.  The purpose of such an action is to establish one's

10 title against adverse claims to real or personal property or any

11 interest therein.  See Cal. Civ. Proc. Code § 760.020(a).  As

12 discussed above, Part IV.A., <u>supra</u>, the Complaint fails to outline

13 any irregularity in the sale, or in Quality's title, that would

14 warrant judgment in Plaintiff's failure with respect to this claim.

15 Moreover, Plaintiff's complaint is not verified, as required by

16 section 761.020.  Plaintiff's first cause of action is therefore

17 DISMISSED WITHOUT PREJUDICE.

18     **C.   Second Cause of Action: Accounting**

19     Plaintiff seeks an accounting to determine the amount of money

20 he owes to Defendants.  "A cause of action for an accounting

21 requires a showing that a relationship exists between the plaintiff

22 and defendant that requires an accounting, and that some balance is

23 due the plaintiff that can only be ascertained by an accounting."

24 <u>Hafiz v. Aurora Loan Servs.</u>, No. 09-1963, 2009 WL 2029800, at *2

25 (N.D. Cal. July 14, 2009) (quoting <u>Teselle v. McLoughlin</u>, 173 Cal.

26

27 [8] Although this matter is inappropriate for determination at the
   dismissal stage, it is discussed more fully in the Court's Order
28 re: Motions to Expunge Notice of Pending Action, to be issued
   concurrently with this Order.

**United States District Court**
For the Northern District of California

1   App. 4th 156, 179 (Ct. App. 2009)).  Plaintiff does not allege that

2   any balance is due to him.  Instead, he seeks an accounting to

3   determine how much money he owes Defendants.  Compl. ¶¶ 50-51.

4   Plaintiff does not cite any authority that supports his right to

5   seek an accounting under these circumstances.  Accordingly, the

6   claim for an accounting is DISMISSED WITH PREJUDICE.

7        **D.    Third Cause of Action: Fraud**

8        Plaintiff claims that all Defendants committed fraud related

9   to the Deed of Trust.  Compl. ¶¶ 88-122.  Fraud is an intentional

10  tort, the elements of which are (1) misrepresentation; (2)

11  knowledge of falsity; (3) intent to defraud, i.e., to induce

12  reliance; (4) justifiable reliance; and (5) resulting damage.

13  Cicone v. URS Corp., 183 Cal. App. 3d 194, 200 (Ct. App. 1986).  In

14  addition, allegations of fraud must meet the requirements of Rule

15  9(b) of the Federal Rules of Civil Procedure.  Plaintiff "must

16  state with particularity the circumstances constituting fraud . . .

17  ."  Fed. R. Civ. P. 9(b).  More specifically, Plaintiff must

18  include "the who, what, when, where, and how" of the fraud.  Vess

19  v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)

20  (citations omitted).  "The plaintiff must set forth what is false

21  or misleading about a statement, and why it is false."  Decker v.

22  Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994).  In addition,

23  California courts have held that "[t]he requirement of specificity

24  in a fraud action against a corporation requires the plaintiff to

25  allege the names of the persons who made the allegedly fraudulent

26  representations, their authority to speak, to whom they spoke, what

27  they said or wrote, and when it was said or written."  Tarmann v.

28  State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (Ct. App.

13

**United States District Court**
For the Northern District of California

1   1991).  Absent at least some of these details, an assertion that

2   "disclosures" were made by certain defendants will fail to state a

3   claim.

4        First, the Court notes that Defendant fails to allege any of

5   the elements of fraud as to all Defendants who were not

6   participating in the initiation and negotiation of the loan.  This

7   includes Saxon, and Quality.[9]  This cause of action is DISMISSED

8   WITHOUT PREJUDICE as to Saxon and Quality.

9        Plaintiff refers to only two concrete representations that

10  could be repled to state claims for fraud, assuming that Plaintiff

11  can provide sufficient detail.  First, he claims that "defendants"

12  represented to him that he qualified for the loan when in fact he

13  did not.  Compl. ¶¶ 92, 95.  This claim must fail because Plaintiff

14  cannot simply "lump multiple defendants together," and must specify

15  exactly what was said by whom, and when.  See Swartz v. KPMG LLP,

16  476 F.3d 756, 764-65 (9th Cir. 2007).  Second, Plaintiff claims

17  that CityMutual and Paul Financial misrepresented that the maximum

18  yearly increase would be $150 until year six, and that the highest

19  payment possible would be $2749.02, when in fact the highest

20  payment possible was $5817.04.  Compl. ¶ 16-17.  Plaintiff does not

21  allege that a particular employee made these representations, and

22  does not state when or how these representations were made.

23  Plaintiff therefore fails to meet the pleading requirements for

24  fraud.  See Tarmann, 2 Cal. App. 4th at 157.  Plaintiff's claims

25  ───────────────────

[9] Plaintiff does mention that "Defendant verbally promised

26  modification and subsequently rejected said offer after Plaintiff
    fully complied with Defendant Saxon Mortgage Services, Inc.'s

27  request for financial information."  Compl. ¶ 93.  Construed
    generously, this may allude to a possible claim based on promissory

28  fraud, but the Court cannot discern the elements of a coherent
    fraud claim from this statement alone.

**United States District Court**
For the Northern District of California

1  for fraud are DISMISSED WITHOUT PREJUDICE as to CityMutual and

2  Saxon.[10]

3      **E.  Fourth Cause of Action: Constructive Fraud**

4      This cause of action is alleged against CityMutual and Paul

5  Financial, however, the allegations in this cause of action only

6  specifically mention CityMutual.  Because this cause of action may

7  be brought only against a fiduciary, <u>Salahutdin v. Valley of Cal.</u>,

8  24 Cal. App. 4th 555, 562 (Ct. App. 1994), and "a financial

9  institution owes no duty of care to a borrower when the

10 institution's involvement in the loan transaction does not exceed

11 the scope of its conventional role as a mere lender of money,"

12 <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 231 Cal. App. 3d 1089, 1096

13 (Ct. App. 1991), Plaintiff must plead significantly more detail

14 regarding Paul Financial's role in any fraud in order to state a

15 claim against it.  In addition, the Court finds that this cause of

16 action must be DISMISSED WITHOUT PREJUDICE as to both Defendants

17 for failure to meet the pleading requirements of Rule 9(b) of the

18 Federal Rules of Civil Procedure, as described in Part IV.D, <u>supra</u>.

19     **F.  Fifth Cause of Action: RESPA**

20     The Complaint includes several summary assertions that

21 Defendants violated the Real Estate Settlement Procedures Act

22 ("RESPA"), 12 U.S.C. § 2601 <u>et</u> <u>seq</u>.  Compl. ¶ 132-37.  Plaintiff

23 only cites one specific provision that Defendants allegedly

24 violated.  This section, 12 U.S.C. § 2607(b), refers to the

25 splitting of charges and kickbacks.  The Complaint includes only

26 ─────────────

27 [10] The Complaint's twenty-fourth cause of action alleges a
violation of section 1572 of the California Civil Code, which
simply sets out California's statutory definition of fraud.  The

28 twenty-fourth cause of action is DISMISSED for the same reasons as
the cause of action set forth in the above section.

two conclusory allegations that suggest that each of the Defendants was engaged in an "illegal scheme the purpose of which was to execute loans secured by real property in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction." Compl. ¶¶ 45, 89. This assertion is completely unsupported by any factual claims in the Complaint.

Saxon has suggested that Plaintiff may be attempting to assert a claim against it, as the loan servicer, for failing to respond to a qualified written request that Plaintiff claims to have sent Saxon, and to which Saxon allegedly failed to respond. Saxon MTD at 9; Compl. ¶ 40-41. A response to a valid qualified written request is required under 12 U.S.C. § 2605(e), and a failure to provide such a response is actionable under § 2605(f). The Court agrees that this is the only discernable cause of action under RESPA that has factual support in the Complaint.

A number of courts, including this Court, have read section 2605(f) to require a showing of pecuniary damages in order to state a claim. For example, in Hutchinson v. Del. Sav. Bank FSB, the court stated that "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." 410 F. Supp. 2d 374, 383 (D.N.J. 2006). This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm. See Singh v. Wash. Mut. Bank, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any

1  facts in support of their conclusory allegation that as a result of

2  defendants' failure to respond, defendants are liable for actual

3  damages, costs, and attorney fees" (quotation marks and citation

4  omitted)).  "[C]ourts have interpreted this requirement [to plead

5  pecuniary loss] liberally."  <u>Yulaeva v. Greenpoint Mortgage</u>

6  <u>Funding, Inc.</u>, No. 09-1504, 2009 U.S. Dist. LEXIS 79094, *44 (E.D.

7  Cal. Sept. 9, 2009).  For example, in <u>Hutchinson</u>, Plaintiffs were

8  able to plead such a loss by claiming that they had suffered

9  negative credit ratings as a result of violations of RESPA.  410 F.

10  Supp. 2d at 383.  Plaintiff's Complaint does not indicate that he

11  suffered in any way from Saxon's failure, except in a conclusory

12  manner.  Compl. ¶ 139.  Moreover, the Complaint completely fails to

13  describe the qualified written request in any detail.

14  Consequently, this cause of action is DISMISSED WITHOUT PREJUDICE.

15      **G.**    <u>**Sixth Cause of Action: Reformation**</u>

16      This cause of action first complains that Defendants failed to

17  inform Plaintiff of the terms of the Deed of Trust.  Compl. ¶¶ 141-

18  49.  However, Plaintiff had a duty to familiarize himself with the

19  Deed of Trust itself.  This document explicitly contains many of

20  the terms of the Deed of Trust, and refers to or attaches the other

21  documents that contained relevant terms.  <u>See</u> DOT.

22      Plaintiff argues that the loan was unconscionable.  Compl.

23  ¶ 147.  He states that the eventual payments exceeded his monthly

24  income by almost 60%, and also claims that Defendants had superior

25  bargaining power.  <u>Id.</u> ¶¶ 143, 146.  Plaintiff concludes by

26  asserting that this Court has the power to reform the contract

27  under California Civil Code section 3399, which states:

28          When, through fraud or a mutual mistake of the

> parties, or a mistake of one party, which the
> other at the time knew or suspected, a written
> contract does not truly express the intention of
> the parties, it may be revised, on the
> application of a party aggrieved, so as to
> express that intention, so far as it can be done
> without prejudice to rights acquired by third
> persons, in good faith and for value.

Cal. Civ. Code. § 3399.  As previously noted, Plaintiff claims that Defendants fraudulently promised him loan terms that were different from the terms contained by the loan documents.  <u>See</u> Part IV.D. This cause of action is therefore premised on fraud or mistake, and is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[11]  This argument fails for the same reasons as Plaintiff's claim for fraud.  <u>See</u> Part IV.D.  This cause of action is DISMISSED WITHOUT PREJUDICE.

**H.  <u>Eighth Cause of Action: The Foreign Language Contract Act, Cal. Civ. Code § 1632 ("FLCA")</u>**

California's FLCA requires the provision of translations of certain contracts into specified languages (including Spanish), if the contract was primarily negotiated in that language.  Plaintiff alleges that he negotiated the loan in Spanish, which he claims is his primary language.  Compl. ¶ 158.  The Court first notes the absence of any alleged contract existing between Plaintiff and either Saxon or Quality.  Plaintiff can only complain that later communications from these parties -- such as the Notice of Default -- were not in Spanish.  Compl. ¶¶ 160, 163.  However the statute only requires parties to the transaction to provide "a translation of the contract or agreement" to the other party.  Cal. Civ. Code

---

[11] It is unclear whether Plaintiff is also attempting to reform the contract on the basis of unconscionability alone.  If so, Plaintiff has leave to state a separate cause of action on this basis.

**United States District Court**
For the Northern District of California

§ 1632(b).  Plaintiff cites no authority to suggest that all documents or communications from other parties must be transmitted to him in Spanish.  This cause of action is DISMISSED WITH PREJUDICE as to Saxon and Quality.

Paul Financial's only argument is that it did not participate in negotiations with Plaintiff -- rather, CityMutual, Plaintiff's Broker, worked with Paul Financial to secure the loan.  Paul Financial MTD at 8.  However, the Complaint does not indicate that Plaintiff had no communications with Paul Financial -- rather, it claims that the "Broker and Lender" both provided him with certain "disclosures."  Compl. ¶ 6.  This argument alone therefore does not provide a basis for dismissing this claim as to CityMutual or Paul Financial at this stage of the litigation.

**I.  Ninth Cause of Action: The California Consumer Legal Remedies Act ("CLRA")**

The California Legal Remedies Act applies to transactions "intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. § 1770(a).  Defendants argue that the statute does not typically apply to mortgage loans, which are neither goods nor services.  See Consumer Solutions Reo, LLC v. Hillery, No. 05-4357, 2009 U.S. Dist. LEXIS 76244, *33-37 (N.D. Cal. Aug. 26, 2009).  Even if the Complaint could be construed as stating a claim related to "services" provided in relation to the loan, such ancillary services are not covered by the statute.  See Fairbanks v. Sup. Court, 46 Cal. 4th 56, 65 (2009) ("Using the existence of these ancillary services to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in

19

1    limiting the definition of 'goods' to include only 'tangible

2    chattels.'").  Plaintiff offers no response to this argument.  This

3    cause of action is therefore DISMISSED WITH PREJUDICE.

4         **J.    Tenth Cause of Action: TILA**

5         Plaintiff alleges that Paul Financial violated 15 U.S.C.

6    § 1638 and 12 C.F.R. § 226.18 because it "failed to disclose in the

7    contract the material terms of the loan prior to consummation of

8    the subject transaction."  Compl. ¶ 176.  The Complaint does not

9    specify which provisions of these sections Paul Financial has

10   allegedly violated, nor does it state which disclosures were

11   incorrect or omitted.  This makes it difficult to determine whether

12   the loan documents in fact contained the challenged terms.  It

13   makes it difficult to determine whether the relevant requirement is

14   applicable to the type of loan at issue: a refinance loan.  This

15   cause of action therefore fails to put the Defendants on notice of

16   the claims against them.  Rather than attempt to puzzle out a

17   plausible cause of action from Plaintiff's fifty-page Complaint,

18   the Court will DISMISS this cause of action WITHOUT PREJUDICE.

19        **K.    Eleventh Cause of Action: False Advertising Law, Cal.
          Bus. & Prof. Code §§ 17500 et seq. ("FAL")**
20

21        Plaintiff's eleventh cause of action includes conclusory

22   claims that Defendants have engaged in advertising to the public

23   that is deceptive because it used "the word 'fixed' to describe a

24   variable rate loan that is only fixed for an introductory period."

25   Compl. ¶¶ 182-184.  The Complaint does not state which Defendants

26   published these advertisements.  Nor does the Complaint indicate

27   that he was actually exposed to and relied on the vaguely-described

28   advertisements, as is required by the statute.  <u>True v. Am. Honda</u>

United States District Court
For the Northern District of California

Motor Co., Inc., 520 F.Supp.2d 1175, 1182 (C.D. Cal. 2007) ("[M]ost courts that have confronted this issue . . . have concluded that [the FAL] impose a requirement that a [FAL] plaintiff actually was exposed to and relied on the misleading advertisements." (citations omitted)).  Plaintiff therefore has not shown that he has standing to pursue this claim.  This cause of action is therefore DISMISSED WITHOUT PREJUDICE.

### L.   Twelfth Cause of Action: Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL")

Plaintiff simply incorporates the previous paragraphs of his Complaint into this cause of action, in hopes that it will state a claim under the UCL.  Because Plaintiff does not make any separate arguments with respect to this cause of action, the Court finds that Plaintiff has failed to plead that the actions of any Defendant were "unlawful, unfair or fraudulent business act[s]" as prohibited by the UCL.  Cal. Civ. Code § 17200.  The only exception is Plaintiff's claim under section 1632 of the California Civil Code, which survives exclusively against Paul Financial and CityMutual.  See Part IV.H, supra.  This cause of action is DISMISSED WITH LEAVE TO AMEND as to Quality and Saxon.

### M.   Thirteenth Cause of Action: Unfair Debt Collection Practices

Plaintiff alleges that Saxon and Quality have violated both the Federal Fair Debt Collection Practices Act ("FFDCPA"), 15 U.S.C. § 1692 et seq., and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788(e), (f), as well as unspecified provisions of RESPA.  Compl. ¶ 191.

Plaintiff fails to state a claim under the RFDCPA.  The Court

21

notes that the subsections that Plaintiff refers to, subsections

(e) and (f) of section 1788, do not exist.

Plaintiff also fails to state a claim under the FFDCPA.  The

Complaint does not identify which of Defendants' actions violated

this statute.  However, the statute applies only to "debt

collectors," which include "any person . . . in any business the

principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly,

debts owed or due or asserted to be owed or due another. . . ."  15

U.S.C. 1692a(6).  Plaintiff includes only a conclusory allegation

that Saxon is a "debt collector," but he also alleges that Saxon

was a loan servicer, and he does not allege when Saxon began its

relationship with the loan.  Compl. ¶ 6.  The FFDCPA's "definition

of debt collector 'does not include the consumer's creditors, a

mortgage servicing company, or any assignee of the debt, so long as

the debt was not in default at the time it was assigned.'"  Larkin

v. Select Portfolio Servicing, Inc., No. 09-1280, 2009 U.S. Dist.

LEXIS 97656, *9-10 (E.D. Cal. Oct. 21, 2009) (quoting Perry v.

Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).  Because

Plaintiff alleges no facts to conclude that Saxon or any other

party is a debt collector, this cause of action must be DIMISSED

WITHOUT PREJUDICE.

**N.   Fourteenth Cause of Action: Declaratory Relief**

Because this "cause of action" is ultimately a request for

relief, in order to weigh it the Court must look to the underlying

claims.  See, e.g., Weiner v. Klais and Co., Inc., 108 F.3d 86, 92

(6th Cir. 1997) ("With regard to Count IV, in which plaintiff seeks

declaratory relief, plaintiff has merely asserted a form of relief,

not a cause of action. Plaintiff is not entitled to this relief in the absence of a viable claim.").  The Court finds no unique claims within this cause of action, and therefore it is DISMISSED WITHOUT PREJUDICE to Plaintiff seeking declaratory relief on the basis of some other cause of action.

### O.   **Sixteenth Cause of Action: Slander of Title**

Plaintiff accuses all Defendants of slander of title, and specifically accuses Saxon and Quality of slandering his title by recording the Notice of Default. Compl. ¶ 213.  Slander of title is a "tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage." Southcott v. Pioneer Title Co., 203 Cal. App. 2d 673, 676 (Ct. App. 1962).  Saxon contends that recording a notice of default is a privileged act.  Saxon MTD at 17.  Section 2924(a) explicitly states that the notice requirements of nonjudicial foreclosure sales are privileged communications.  See Kachlon v. Markowitz, 168 Cal. App. 4th 316, 333 (2008) ("We hold that section 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common interest privilege of section 47, subdivision (c)(1).").  Plaintiff has offered no response.  This cause of action is DISMISSED WITHOUT PREJUDICE.

### P.   **Seventeenth Cause of Action: Conspiracy and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO")**

For his seventeenth cause of action, Plaintiff pastes a RICO claim onto his previous allegations.  The elements of a civil RICO

1  claim include: "(1) conduct (2) of an enterprise (3) through a

2  pattern (4) of racketeering activity (known as 'predicate acts')

3  (5) causing injury to plaintiff's 'business or property.'"  Living

4  Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 361

5  (9th Cir. 2005).  Plaintiffs must allege that defendants committed

6  at least two of the enumerated predicate acts to establish a RICO

7  violation.  See 18 U.S.C. § 1961(5). Where a plaintiff alleges

8  fraud, as appears to be the case here, the plaintiff must plead the

9  elements of fraud with particularity.  See Odom v. Microsoft Corp.,

10  486 F.3d 541, 553 (9th Cir. 2007).

11      Plaintiff's RICO claim must fail because he does not identify

12  the predicate acts that are meant to form a basis for the RICO

13  violation.  See Bell Atlantic Corp., 550 U.S. at 555 (allegations

14  must "give the defendant fair notice of what the . . . claim is and

15  the grounds upon which it rests").  Nor does he allege, in more

16  than a conclusory fashion, that Defendants engage in a "pattern" of

17  illegal conduct over a sufficient period of time.  See Compl. ¶ 32.

18  He does not allege that Defendants were part of an "enterprise" or

19  "association in fact" as required by 18 U.S.C. § 1961(4).  This

20  cause of action is DISMISSED WITHOUT PREJUDICE.

21  **Q.   Eighteenth Cause of Action: Intentional Infliction of
    Emotional Distress ("IIED")**

22

23      To plead a claim for IIED, Plaintiff must allege: "(1) extreme

24  and outrageous conduct by the defendant with the intention of

25  causing, or reckless disregard of the probability of causing,

26  emotional distress; (2) the plaintiff's suffering severe or extreme

27  emotional distress; and (3) actual and proximate causation of the

28  emotional distress by the defendant's outrageous conduct."

**United States District Court**
For the Northern District of California

1  _Christensen v. Sup. Court_, 54 Cal. 3d 868, 903 (1991).  Conduct is

2  only "extreme and outrageous" when it was "so extreme as to exceed

3  all bounds of that usually tolerated in a civilized community."

4  _Davidson v. City of Westminster_, 32 Cal. 3d 197, 185 (1982)

5  (citation omitted).  For emotional distress to be severe, it must

6  be "of such substantial quantity or enduring quality that no

7  reasonable man in a civilized society should be expected to endure

8  it."  _Fletcher v. Western Nat'l Life Ins. Co._, 10 Cal. App. 3d 376,

9  397 (Ct. App. 1970).

10      "In the context of debt collection, courts have recognized

11  that the attempted collection of a debt by its very nature often

12  causes the debtor to suffer emotional distress."  _Ross v. Creel_

13  _Printing & Publishing Co._, 100 Cal. App. 4th 736, 745 (Ct. App.

14  2002) (citing _Bundren v. Sup. Court_, 145 Cal. App. 3d 784, 789 (Ct.

15  App. 1983)).  Plaintiff has failed to allege anything beyond normal

16  debt collection practices that would rise to the level of "extreme

17  and outrageous" conduct necessary to state a claim for IIED.  _See_

18  _Pineda v. Reyes_, No. 09-1938, 2009 U.S. Dist. LEXIS 96853, *26-28

19  (S.D. Cal. Oct. 20, 2009) (dismissing IIED claim in wrongful

20  foreclosure suit); _Coyotzi_, 2009 U.S. Dist. LEXIS 91084 at *27

21  (same).  This cause of action is DISMISSED WITHOUT PREJUDICE.

22      **R.   Nineteenth Cause of Action: Negligent Infliction of**
23      **Emotional Distress ("NIED")**

24      "Negligent infliction of emotional distress is not an

25  independent tort; it is the tort of negligence to which the

26  traditional elements of duty, breach of duty, causation, and

27  damages apply."  _Ess v. Eskaton Properties, Inc._, 97 Cal. App. 4th

28  120, 126 (Ct. App. 2002) (citing _Marlene F. v Affiliated_

1  <u>Psychiatric Med. Clinic, Inc.</u>, 48 Cal. 3d 583, 588 (1989)).

2  Plaintiff must allege a valid legal duty of care to support his

3  claim as to each Defendant.  <u>See</u> <u>Watts v. Decision One Mortgage</u>

4  <u>Co., LLC</u>, No. 09-0043, 2009 U.S. Dist. LEXIS 59694, *5-7 (S.D. Cal.

5  July 13, 2009).  The Complaint has only attempted alleged legal

6  duty of care as to CityMutual, Plaintiff's broker, and does not

7  suggest that it would be possible to allege a valid legal duty

8  against other entities.  <u>Id.</u> (noting that, generally, "financial

9  institutions owe no duty of care to a borrower when the

10 institution's involvement in the loan transaction does not exceed

11 the scope of its conventional role as a mere lender of money."

12 (quoting <u>Nymark v. Heart Fed. Savings & Loan Assn.</u>, 231 Cal. App.

13 3d 1089, 1096 (Ct. App. 1991))).  This cause of action is therefore

14 DISMISSED WITHOUT PREJUDICE as to all parties except CityMutual.

15     **S.**    **Twentieth Cause of Action:  Rescission**

16     For Plaintiff's twentieth cause of action, Plaintiff requests

17 rescission but does not state an independent basis for rescission.

18 It is therefore redundant with his prior causes of action.  This

19 cause of action is DISMISSED WITHOUT PREJUDICE as to Plaintiff's

20 ability to seek rescission as a remedy to a clearly-pled cause of

21 action.

22     **T.**    **Twenty-First Cause of Action: Injunctive Relief**

23     Plaintiff requests that this Court enjoin the sale of the

24 property, but the sale has already taken place.  <u>See</u> Trustee's Deed

25 Upon Sale.  This cause of action is DISMISSED WITH PREJUDICE.

26     **U.**    **Twenty-Second Cause of Action: Specific Performance**

27     Plaintiff seeks specific performance pursuant to California

28 Civil Code section 2923.6(a).  Compl. ¶¶ 234-43.  Plaintiff

contends that this statute places an obligation on Saxon to modify the loan terms rather than foreclose.  Id.  However, Courts that have considered this statute have found that its language is permissive, and that "nothing in Cal. Civ. Code § 2923.6 imposes a duty on servicers of loans to modify the terms of loans or creates a private right of action for borrowers."  Farner v. Countrywide Home Loans, Inc., No. 08-2193, 2009 U.S. Dist. LEXIS 5303, *4-5 (S.D. Cal. Jan. 26, 2009); see also Butera v. Countrywide Home Loans, Inc., No. 09-1677, 2009 U.S. Dist. LEXIS 99355, *23-24 (E.D. Cal. Oct. 26, 2009) (citing Farner); Gaitan v. Mortgage Elec. Registration Sys., No. 09-1009, 2009 U.S. Dist. LEXIS 97117, *18-19 (C.D. Cal. Oct. 5, 2009) ("[S]ection 2923.6 . . . clearly does not create a private right of action.").  Defendants have raised this point, and Plaintiff has offered no response.  This cause of action is therefore DISMISSED WITH PREJUDICE.

## V.   Twenty-Third Cause of Action: California Civil Code § 1788.17

Section 1788.17 of the California Civil Code requires debt collectors to comply with specified portions of TILA.  The Court must therefore dismiss this cause of action for the same reasons that it dismissed Plaintiff's thirteenth cause of action.  See Part IV.M, supra.  In addition, the Court notes that the specific violations of TILA that Plaintiff cites in his Complaint are only supported by recitations of the elements of the TILA provisions, without any facts that may support an inference that Defendants actually violated the cited provisions.  See Compl. ¶¶244-50.  This cause of action is therefore DISMISSED WITHOUT PREJUDICE.

///

**W.   Motions to Strike**

The Court has dismissed nearly all of the twenty-four causes of action stated in the Complaint, including most portions of the Complaint that Saxon and Paul Financial now seek to strike. Plaintiff will be granted an opportunity to amend his complaint and the amendments will be substantial -- or so the Court hopes.  In light of this, the Court finds that resolution of the Motions to Strike would be futile.  The Motions to Strike are therefore DENIED as moot.  The Court instructs Plaintiff to take care to avoid making repeated demands for punitive damages in connection with causes of action that only allow for equitable remedies, or from demanding attorney fees without statutory support.

**V.   CONCLUSION**

Plaintiff's Motion to Remand is DENIED.  Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART.  The disposition of each of Plaintiff's causes of action is as follows.  Each number signifies the corresponding cause of action:

1.   Quiet Title: DISMISSED WITHOUT PREJUDICE;

2.   Accounting: DISMISSED WITH PREJUDICE;

3.   Fraud: DISMISSED WITHOUT PREJUDICE;

4.   Constructive Fraud: DISMISSED WITHOUT PREJUDICE;

5.   RESPA:  DISMISSED WITHOUT PREJUDICE;

6.   Reformation:   DISMISSED WITHOUT PREJUDICE;

7.   Breach of Broker's Duty: not disturbed by this order;

8.   Cal. Civ. Code § 1632:  DISMISSED WITH PREJUDICE as to Saxon and Quality; not dismissed as to Paul Financial or CityMutual;

**United States District Court**
For the Northern District of California

9.    CLRA: DISMISSED WITH PREJUDICE;

10.   TILA: DISMISSED WITHOUT PREJUDICE;

11.   Cal. Bus. & Prof. Code § 17500: DISMISSED WITHOUT
      PREJUDICE;

12.   Cal. Bus. & Prof. Code § 17200: DISMISSED WITHOUT
      PREJUDICE as to Saxon and Quality, not dismissed as to
      CityMutual or Saxon;

13.   Unfair Debt Collection Practices: DISMISSED WITHOUT
      PREJUDICE;

14.   Declaratory Relief: DISMISSED WITHOUT PREJUDICE to
      Plaintiff's ability to seek declaratory relief on the
      basis of a well-pled cause of action;

15.   Elder Abuse: not disturbed by this order;

16.   Slander of Title: DISMISSED WITHOUT PREJUDICE;

17.   RICO: DISMISSED WITHOUT PREJUDICE;

18.   Intentional Infliction of Emotional Distress: DISMISSED
      WITHOUT PREJUDICE;

19.   Negligent Infliction of Emotional Distress: DISMISSED
      WITHOUT PREJUDICE as to all Defendants except Citymutual,
      and not dismissed as to CityMutual;

20.   Rescission: DISMISSED WITHOUT PREJUDICE to Plaintiff's
      ability to seek rescission on the basis of a well-pled
      cause of action;

21.   Injunctive Relief: DISMISSED WITH PREJUDICE;

22.   Specific Performance: DISMISSED WITH PREJUDICE;

23.   Cal. Civ. Code § 1788.17: DISMISSED WITHOUT PREJUDICE;

24.   Cal. Civ. Code § 1572:  DISMISSED WITHOUT PREJUDICE.

Plaintiff is granted leave to amend his Complaint.  Attorney

for Plaintiff is warned that dismissal without prejudice is, in this case, by no means an invitation to replead certain causes of action.  Plaintiff's prior submission of a redundant, poorly-organized Complaint that pleads twenty-four causes of action borders on vexatious.  By including such a broad variety of claims, Plaintiff is consuming judicial time and resources that might be better spent on his stronger causes of action.  Plaintiff's interest would be better served by focusing on a handful of core claims that go to the heart of his allegations.  Plaintiff may submit an amended complaint no later than thirty (30) days from the date of this Order.

IT IS SO ORDERED.

Dated: November 16, 2009



UNITED STATES DISTRICT JUDGE